**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

**Case No.**

**1:14-cv-24842-FAM**

---

**FABRIZIO DULCETTI NEVES,**

**Appellant**
**v.**

**MARKWOOD INVESTMENTS LTD and GOLDEN DAWN CORPORATION,**

**Appellees**

---

**Appeal from the United States Bankruptcy Court for the Southern District of Florida
Bankruptcy Case No. 10-AP-02122-LMI**

---

**INITIAL BRIEF OF APPELLANT, FABRIZIO DULCETTI NEVES**

---

Joanne Gelfand
Florida Bar No. 515965
Michael B. Chavies
Florida Bar No. 191254
Brian P. Miller
Florida Bar No. 980633
Ilana Tabacinic
Florida Bar No. 57597
**Akerman LLP**
One Southeast Third Avenue
25th Floor
Miami, Florida 33131-1714
Phone: (305) 374-5600
Fax: (305) 374-5095
joanne.gelfand@akerman.com
michael.chavies@akerman.com
brian.miller@akerman.cmom
ilana.tabacinic@akerman.com
*Attorneys for Appellant Fabrizio Dulcetti Neves*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...........................................................**Error! Bookmark not defined.**

STATEMENT OF BASIS OF APPELLATE JURISDICTION.................................................... 1

STATEMENT OF ISSUES PRESENTED.................................................... 1

APPLICABLE STANDARDS OF APPELLATE REVIEW .................................................... 2

STATEMENT OF THE CASE.................................................... 3

    NATURE OF THE CASE, COURSE OF PROCEEDINGS, AND DISPOSITION BELOW .................................................... 3

STATEMENT OF FACTS .................................................... 6

    THE PROMISSORY NOTE CLAIMS .................................................... 6

    MR. NEVES' *FIRST* FAILED ATTEMPT TO OBTAIN SOURCE OF FUNDS DISCOVERY IN FEBRUARY 2010 .................................................... 7

    MR. NEVES' *SECOND* FAILED ATTEMPT TO OBTAIN THE SOURCE OF FUNDS DISCOVERY IN OCTOBER 2013.................................................... 8

    MR. NEVES' *THIRD* FAILED ATTEMPT TO OBTAIN THE SOURCE OF FUNDS DISCOVERY IN JANUARY 2014.................................................... 11

ARGUMENT .................................................... 13

    I.    THE SOURCE OF FUNDS DISCOVERY WAS REASONABLY CALCULATED TO LEAD TO ADMISSIBLE EVIDENCE CONCERNING WHETHER THE PROMISSORY NOTES VIOLATED PUBLIC POLICY AND WERE UNENFORCEABLE .................................................... 15

    II.    THE SOURCE OF FUNDS DISCOVERY WAS RELEVANT TO THE AFFIRMATIVE DEFENSES OF *IN PARI DELICTO* AND UNCLEAN HANDS AND WAS REASONABLY CALCULATED TO LEAD TO ADMISSIBLE EVIDENCE CONCERNING THOSE DEFENSES.................................................... 19

        A.    The Source Of Funds Discovery Was Relevant And Reasonably Calculated To Lead To The Discovery Of Admissible Evidence Concerning The Appellant's Properly Pled Affirmative Defense Of *In Pari Delicto* .................................................... 19

        B.    The Discovery Was Reasonably Calculated To Lead To Admissible Evidence Supporting Mr. Neves' Unclean Hands Defense Which He Is Entitled To Assert .................................................... 21

    III.    THE BANKRUPTCY COURT ERRED IN DENYING THE DEFENDANT'S MOTION TO REHEAR, ALTER AND/OR AMEND BASED ON NEWLY DISCOVERED EVIDENCE.................................................... 23

CONCLUSION.................................................... 25

CERTIFICATE OF SERVICE .................................................... 26

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Al-Ibrahim v. Edde,*
   897 F. Supp. 620 (D.C.D.C. 1995) ......................................................................17

*Cacique, Inc. v. Robert Reiser & Co., Inc.,*
   169 F.3d 619 (9th Cir. 1999) .............................................................................2

*Cox v. Administrator U.S. Steel & Carnegie,*
   17 F.3d 1386 (11th Cir. 1994), *modified on other grounds,* 30 F.3d 1347 (11th
   Cir. 1994) .........................................................................................................2

*D & L Harrod, Inc. v. U. S. Precast Corp.,*
   322 So. 2d 630 (Fla. 3d DCA 1975) ..................................................................17

*Farnsworth v. Procter & Gamble Co.,*
   758 F.2d 1545 (11th Cir.1985) ..........................................................................13

*Felker v. Zampatti,*
   No. 3:10–cv–459–J–32TEM, 2011 WL 6372341 (M.D. Fla. March 11, 2011) ....................14

*Frye v. Taylor,*
   263 So.2d 835 (Fla. 4th DCA 1972) ...................................................................15

*Gray v. Manklow (In re Optical Tech., Inc.),*
   246 F.3d 1332 (11th Cir. 2001) .........................................................................2

*Grimes Contracting, Inc. v. Grimes Util., Inc.,*
   No. 3:08-cv-965-J-16MCR, 2009 WL 88571 (M.D. Fla. Jan. 14, 2009) ...............................23

*Guardian Life Ins. Co. v. Solomon (In re Solomon),*
   95 F.3d 1076 (11th Cir. 1996) ..........................................................................2

*Hauer v. Thum,*
   67 So. 2d 643, 645 (Fla. 1957)...........................................................................21

*In re American Motor Club, Inc.,*
   129 B.R. 981 (Bankr. E.D.N.Y. 1991)................................................................14

*In re Continuum Care Services, Inc.,*
   398 B.R. 708 (Bankr. S.D. Fla. 2008)................................................................23

*In re Englander,*
   95 F.3d 1028 (11th Cir. 1996) ..........................................................................2

*In re Gosman*,
   382 B.R. 826 (S.D. Fla. 2007) ......................................................................20

*In re Horlacher*,
   389 B.R. 257 (Bankr. N.D. Fla. 2008) ..........................................................23

*In re Int'l Yacht and Tennis, Inc.*,
   922 F. 2d 659 (11th Cir. 1991) ................................................................2, 24

*In re Piper Aircraft Corp.*,
   362 F.3d 736 (11th Cir. 2004) .......................................................................2

*James v. DuBreuil*,
   500 F. 2d 155 (5th Cir. 1974) ......................................................................19

*Kaiser Steel Corp. v. Mullins*,
   455 U.S. 72 ...................................................................................................15

*Katz v. Woltin*,
   765 So. 2d 279 (Fla. 4th DCA 2000) ...........................................................16

*Lewis v. United States Postal Service*,
   840 F.2d 712 (9th Cir. 1988) .......................................................................23

*Local No. 234 v. Henley & Beckwith, Inc.*
   66 So. 2d 818 (Fla. 1953) ............................................................................15

*Marcel v. Marcel*,
   132 So. 2d 210, 211 (Fla. 2d DCA 1961) ....................................................21

*May v. Nygard Holdings Ltd.*,
   Case No. 6:03-CV-1832-Orl-DAB, 2007 WL 2120269 (M.D. Fla. July 20,
   2007) .............................................................................................................20

*Neiman v. Provident Life & Accident Ins. Co.*,
   217 F. Supp. 2d 128 (S.D. Fla. 2002) (Moreno, J) ......................................15

*Nisselson v. Lernout*,
   469 F.3d 143 (1st Cir. 2006)...................................................................20, 21

*Official Comm. of Unsecured Creditors v. Henry Mayo Newhall Mem'l Hosp. (In
   re Henry Mayo Newhall Mem'l Hosp.)*,
   282 B.R. 444 (B.A.P. 9th Cir. 2002)...............................................................3

*One Harbor Financial Ltd. Co. v. Hynes Properties, LLC*,
   884 So. 2d 1039 (Fla. 5th DCA 2004) .........................................................17

*Pinter v. Dahl,*
      486 U.S. 622 (1988).......................................................................................19

*Rosenbaum v. Becker & Poliakoff, P.A.,*
      708 F.Supp.2d 1304 (S.D. Fla. 2010) ......................................................13

*S.E.C. v. Comcoa Ltd.,*
      887 F. Supp. 1521 (S.D. Fla. 1995) ....................................................15, 16

*Slizyk v. Smilack,*
      825 So. 2d 428, 430-31 (Fla. 4th DCA 2002)..........................................22

*SNP Boat Service S.A. v. Hotel Le St. James,*
      483 B.R. 776 (S.D. Fla. 2012) .................................................................2

*Sussman v Salem, Saxon & Nielsen, P.A.,*
      153 F.R.D. 689 (M.D. Fla. 1994)..............................................................23

*Tancogne v. Tomjai Enterps. Corp.,*
      408 F. Supp. 2d 1237 (S.D. Fla. 2005) ...............................................22, 23

*Title & Trust Co. of Fla. v. Parker,*
      468 So. 2d 520 (Fla. 1st DCA 1985) ...................................................15, 16

*Truswal Sys. Corp. v. Hydro-Air Eng'g, Inc.,*
      813 F.2d 1207 (Fed. Cir. 1987)...........................................................18, 21

*U.S. v. Bonanno Organized Crime Family of La Cosa Nostra,*
      119 F.R.D. 625 (E.D.N.Y. 1988) ..............................................................14

*United Kingdom v. U.S.,*
      238 F.3d 1312 (11th Cir. 2001) ...............................................................2

*United States v. U.S. Gypsum Co.,*
      333 U.S. 364 (1948)...............................................................................3

*Williams v. City of Dothan, Ala.,*
      745 F.2d 1406 (11th Cir. 1984) ...............................................................14

*Wilson v. Steele,*
      211 Cal. App. 3d 1053 (Cal. Ct. App. 1989), opinion modified (July 19, 1989) ...................17

**Statutes**

28 U.S.C. § 158 (a)(1)....................................................................................1

**Rules**

F.R.E. 401(a) ............................................................................................14

Fed. R. Bankr. P. 8 .......................................................................................................................19

Fed. R. Bankr. P. 8014 ................................................................................................................25

Fed. R. Bankr. P. 9023 ................................................................................................................23

Fed. R. Civ. P. 26(b)(1) ...............................................................................................................14

Fed. R. Civ. P. 30(b)(6) .................................................................................................................8

Fed. R. Civ. P. 59(e) ...................................................................................................................23

## STATEMENT OF BASIS OF APPELLATE JURISDICTION

This Court's appellate jurisdiction to hear and determine the instant appeal arises from 28 U.S.C. Section 158 (a)(1).

## STATEMENT OF ISSUES PRESENTED

I.   WHETHER THE BANKRUPTCY COURT ERRED IN GRANTING THE APPELLEES' MOTION FOR PROTECTIVE ORDER PRECLUDING DISCOVERY AS TO THE SOURCE OF FUNDS FOR TWO PROMISSORY NOTES WHERE THE DISCOVERY WAS REASONABLY CALCULATED TO LEAD TO ADMISSIBLE EVIDENCE CONCERNING WHETHER APPELLANT/GOLDEN DAWN SUFFERED ANY DAMAGES AND THE UNENFORCEABILITY OF THE PROMISSORY NOTES BASED ON VIOLATION OF PUBLIC POLICY, ILLEGALITY OF CONTRACT, FAILURE TO STATE A CLAIM, *IN PARI DILICTO* AND UNCLEAN HANDS.

II.   WHETHER THE BANKRUPTCY COURT ERRED IN DENYING APPELLANT'S MOTION TO REHEAR WHERE NEWLY DISCOVERED EVIDENCE DEMONSTRATED THAT THE APPELLANTS' CONTROL PERSON: *i)* DELIVERED BONDS ILLEGALLY PURCHASED THROUGH STRAW MEN ON THE PRIMARY MARKET IN VENEZUELA TO A BROKER IN THE UNITED STATES (NEW YORK); *ii)* WAS HINDERED FROM PURCHASING A U.S. BROKERAGE FIRM BECAUSE OF THE INABILITY TO DEMONSTRATE TO FINRA THE SOURCE OF FUNDS FOR THE PURCHASE; AND *iii)*  WAS INDICTED IN ITALY ON CHARGES OF CRIMINAL USURY AND USE OF VIOLENT THREATS.

## APPLICABLE STANDARDS OF APPELLATE REVIEW

Discovery orders are generally reviewed for abuse of discretion. *SNP Boat Service S.A. v. Hotel Le St. James*, 483 B.R. 776, 782 (S.D. Fla. 2012) (citing *In re Piper Aircraft Corp.*, 362 F.3d 736, 738 (11th Cir. 2004)). However, where an issue arises pertaining to the relevancy of information sought or the applicability of an affirmative defense, it is a question of state law and the district court's conclusions of state law and interpretation of law are reviewed *de novo*. *See Cox v. Administrator U.S. Steel & Carnegie*, 17 F.3d 1386, 1413 (11th Cir. 1994), *modified on other grounds,* 30 F.3d 1347 (11th Cir. 1994) (discussing the applicability of the attorney client privilege to the discovery of communications and noting that the Court reviews *de novo* discovery rulings which involve mixed questions of law and fact); *United Kingdom v. U.S.,* 238 F.3d 1312, 1319 n. 8 (11th Cir. 2001) (noting that "to the extent the district court's decision is based on an interpretation of law, our review is *de novo*"); *Cacique, Inc. v. Robert Reiser & Co., Inc.*, 169 F.3d 619, 622 (9th Cir. 1999) (citation omitted) (whether information sought is relevant is a question of state law, and the district court's conclusions of state law are reviewed *de novo*). Finally, a bankruptcy court's denial of a motion for reconsideration or rehearing will be reversed upon a finding by the District Court that the denial was an abuse of discretion. *In re Int'l Yacht and Tennis, Inc.*, 922 F. 2d 659, 662 (11th Cir. 1991).

The Bankruptcy Court's conclusions of law are reviewed *de novo*. *See Gray v. Manklow (In re Optical Tech., Inc.)*, 246 F.3d 1332, 1334-35 (11th Cir. 2001); *Guardian Life Ins. Co. v. Solomon (In re Solomon)*, 95 F.3d 1076, 1078 (11th Cir. 1996). Findings of fact made by the Bankruptcy Court are binding on the District Court unless it determines that they are clearly erroneous. *See In re Englander*, 95 F.3d 1028, 1030 (11th Cir. 1996). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court, on the entire evidence, is left with the definite and firm conviction that a mistake has been committed. *See*

*United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948). Determinations by the court involving mixed questions of law and fact are reviewed *de novo*. *Official Comm. of Unsecured Creditors v. Henry Mayo Newhall Mem'l Hosp. (In re Henry Mayo Newhall Mem'l Hosp.)*, 282 B.R. 444, 452 (B.A.P. 9th Cir. 2002).

## STATEMENT OF THE CASE[1]

## NATURE OF THE CASE, COURSE OF PROCEEDINGS, AND DISPOSITION BELOW

This is an appeal from the Bankruptcy Court's Order Granting in Part and Denying in Part Plaintiffs' Motion for Protective Order entered on January 6, 2014 [Adv. Pro. ECF No. 743, 827] (the "Protective Order") and Order Denying Defendant's Motion to Rehear, Alter and/or Amended Order Granting in Part and Denying in Part Plaintiffs' Motion for Protective Order entered on February 3, 2014 [Adv. Pro. ECF. No. 883, 875] (the "Rehearing Order"), precluding the defendant below, Fabrizio Dulcetti Neves ("Mr. Neves" or "Appellant"), from obtaining discovery concerning the source of funds for, *inter alia,* two Promissory Notes that the Appellee/Golden Dawn Corporation ("Golden Dawn"), sought to enforce against the Appellant. The lower court erred in denying the discovery which was reasonably calculated to lead to admissible evidence as to whether Golden Dawn was entitled to damages and the unenforceability of the Promissory Notes based on violation of public policy, illegality of contract, failure to state a claim, *in pari delicto* and unclean hands.

---

[1] The docket herein contains designated docket entries in the Adversary Proceeding, including trial testimony and exhibits and the deposition testimony designated for trial therein at ECF Nos. 2, 3, 13, 14. Appellant anticipates filing an additional supplement to the designations which will be docketed herein by the Bankruptcy Court. Citation to the record will be as follows: Docket entries in this Court will be cited as [ECF No.__]. References to docket entries in the Adversary Proceeding below will be cited as [Adv. Pro. ECF No. __]. References to trial testimony will be cited as Name, page:line. References to deposition testimony will be cited as Name Depo., page:line. References to Trial Exhibits will be cited as Trial Ex.

The Bankruptcy Court mistakenly reasoned that the Protective Order was proper based on the "framework of the case law." (Dec. 10, 2013 Hearing Transcript [Adv. Pro. ECF [No. 812] transcript 61: 20-25 at, 62: 1-10) Most of the lower Court's reasoning concerned the Appellees' unsuccessful fraud claim (Count I). *Id.* at 62 et. seq.  Oddly, in contrast to the liberal spirit and approach to discovery in the federal courts, the  Bankruptcy Court flat out refused to permit the source of funds discovery  reasoning that even if Frieri (Appellee, Golden Dawn) took the money fraudulently, the *in pari delicto* doctrine "does not recognize that as a defense."  (December 10, 2013 Hearing  Transcript [Adv. Pro. ECF No. 812] at 61-62.)  Moreover, the Court found that the Appellant <u>could not</u> step into the shoes of alleged co-conspirators and assert the *in pari delicto* defense.  *Id.* at 69.  Similarly, the Court rejected the Appellant's affirmative defense of unclean hands finding that the allegations of the Fourth Amended Complaint and affirmative defenses did not show the "relatedness requirement" between the action because harm as to the Appellant was not proven.  *Id.* at 63.[2]

The lower court wholeheartedly rejected the Appellant's contentions that discovery concerning the source of funds for the Promissory Notes was proper because the discovery to date already showed, *inter alia*, that Frieri (the control person for Appellants) did not pay taxes anywhere in the world and engaged in illegal bond deals in Venezuela which included exchanging money on the black market through the use of "straw men" and fake identification cards. *Id.* at 43-45.

On January 21, 2014, the Appellant timely filed his motion seeking reconsideration of the Appellees' Motion for Protective Order based on abundant newly discovered evidence all of which was produced in discovery after the December 10, 2013 hearing on the motion.  [Adv.

---

[2]  The transcript mistakenly refers to "Frieri" instead of the Appellant, Mr. Neves, when discussing the harm.  *Id.* at  62:4-10.

Pro. ECF No. 860] (the "Motion to Rehear").  On February 3, 2014, the court entered its order [Adv. Pro. ECF No. 875] denying the Motion to Rehear because of the lack of any case law concerning the relevancy of the source of funds to the enforcement of Promissory Notes which were not illegal on their face.  (January 29 Hearing Transcript [Adv. Pro. ECF No. 883] at 53-55) (the "Rehear Order").

The newly discovered evidence showed that the bonds that Appellant, Markwood Investments Ltd. (Markwood"), illegally purchased in Venezuela were delivered to Markwood's U.S. account at Abadi & Co. in New York ([Adv. Pro. ECF No. 860] at ¶ 5), that Markwood utilized the four offshore accounts where the trail went cold for the monies which were the subject of its unsuccessful fraud claim for a prior and extremely profitable illegal bond transaction, that Frieri's attempt to buy a securities brokerage firm in the U.S. was scrapped because he could not provide the source of funds for the purchase as required by FINRA, that an account in Switzerland funded the Promissory Notes and that Frieri was formally charged in Italy on criminal charges of usury and use of threats and was awaiting trial.  ([Adv. Pro. ECF No. 860] at 4); ([Adv. Pro. ECF No. 844] at 1).

On February 24, 2013, the five day trial in the Adversary Proceeding commenced and on December 11, 2013,  the Bankruptcy Court entered its Memorandum Opinion on Trial  [Adv. Pro. ECF No. 1014] (the "Memorandum Opinion"), finding in favor of the Appellee/Golden Dawn and against the Appellant as to Counts II and V and enforcing the two Promissory Notes against the Appellant.   Final Judgment was entered on December 16, 2014 [Adv. Pro. ECF No. 1022] (the "Final Judgment") against the Appellant in the amounts of $8,384,113.01 in principal and interest through April 21, 2014, plus interest accruing thereafter at a per diem at rate of $5,339.21 and $5,409,028.79 in principal and interest through April 21, 2014, plus interest

accruing thereafter at a per diem rate of $3,503.76 relating to the enforcement of the two Promissory Notes.

This appeal ensued challenging the Protective Order and Rehearing Order.[3]

## STATEMENT OF FACTS

## THE PROMISSORY NOTE CLAIMS

Appellees, Golden Dawn and Markwood, are owned and controlled by Salvador Frieri Gallo ("Frieri") and his brother, Arturo Rafael Frieri ("A. R. Frieri").  (Joint Pretrial Order [Adv. Pro. ECF No. 997] at ¶ 6).  Two Promissory Notes are the subject of this appeal, *to wit: i)*  the Promissory Note dated December 15, 2006 in the principal amount of $4,430,000 between Acosta Realty and Mr. Neves as makers and Golden Dawn as payee (the "Consolidated Note"), and *ii)* the Promissory Note dated February 5, 2007 in the principal amount of $3,000,000 showing Acosta Realty and Mr. Neves as makers and Golden Dawn as payee (this "Second Note" together with the Consolidated Note the "Promissory Notes").  *Id.* at ¶¶ 27, 31.  Frieri controlled the operations of both Golden Dawn and Markwood at the time the Promissory Notes were entered into, while his brother, A. R. Frieri, though a part owner, lacked any relevant knowledge concerning the Promissory Notes.  (A.R. Frieri, 132:13-20; 133:10 to 134:3; 142:16 to 144:8).[4]

Following trial, the Bankruptcy Court found that both Promissory Notes were enforceable against Mr. Neves and entered judgment against Mr. Neves.

---

[3] Four related appeals were filed together with this appeal as required by Local Rule of the U.S. Bankruptcy Court for the S.D. of Fla. 8001-1.

[4] Frieri testified by deposition that he is solely responsible for the operations of both Golden Dawn and Markwood and that information concerning those entities should be obtained exclusively from him.  [Bankr. ECF No. 738 Exhibit C; 36:14-17; 41:11-12; 47:12-21]; Frieri Depo, 36:14-17; 41:6-12; 46:25 to 47:21.

On November 7, 2011, after four failed stabs at filing a cognizable complaint, the Appellees filed their Fourth Amended Complaint consisting of six counts including Counts  II and V seeking to enforce the Consolidated Note and Second Note, respectively (the "Promissory Note Counts").  [Adv. Pro. ECF No. 419.]  Notably, the Bankruptcy Court ordered Mr. Neves to file an answer and precluded him from filing a motion to dismiss even though his previous motions to dismiss were granted.  (Transcript of Hearing on December 10, 2013 ("Dec. 10 Trans.") [Adv. Pro. ECF No. 812] at 75).

## MR. NEVES' *FIRST* FAILED ATTEMPT TO OBTAIN SOURCE OF FUNDS DISCOVERY IN FEBRUARY 2010.

In February 2010, Mr. Neves served discovery seeking information concerning the capitalization of the Appellees in an effort, *inter alia*, to discover the source of funds for the Promissory Notes for the purpose of demonstrating that Golden Dawn lacked standing to enforce the Promissory Notes.   (Expedited Motion to Compel Responses by Plaintiffs to Certain Specified Discovery Requests [Adv. Pro. ECF No. 36] at 4-5).  Mr. Neves also contended the discovery was likely to lead to admissible evidence as to his affirmative defense of *in pari delicto*. *Id.*  Mr. Neves also sought Golden Dawn's tax returns since Frieri testified that he did not pay taxes anywhere in the world, [Adv. Pro. ECF No. 782 at 5; Ex. F], to show that the Promissory Notes were unenforceable and not true loans.[5]  (Trial Ex. D-8, Supplemental Interrogatory Answer 5).

---

[5] Golden Dawn executed a General Release in favor of Mr. Neves dated December 15, 2006, the same date as the Consolidated Note, showing that the consolidated Note was unenforceable and not a true loan. (Defendant's Trial Exhibit H-1.) The lower court barred parol evidence as to the intention of the parties concerning the General Release, yet the lower court found that the parties could not have intended for the General Release to release the Consolidated Note. (Memorandum Opinion at 16 [Adv. Pro. ECF. No. 1014].  Mr. Neves contends that the lower court erred by considering facts not in evidence, including parol evidence that the court had ordered excluded, and Mr. Neves appealed from that portion of the Memorandum Opinion finding that the General Release was not intended to release the Consolidated Note. Case No. 14-24840-KAM.

The Bankruptcy Court found that the discovery was not likely to lead to the discovery of admissible evidence based "just by virtue of [the Appellees] referring to the pleadings." ([Adv. Pro. ECF No. 58] at 27-28). The lower court's Order denying the discovery was *without prejudice* and the Court invited Mr. Neves to renew the Motion "at such time as [Mr. Neves] . . . can demonstrate that there is any plausible basis on which you could argue that any of this [the discovery] is relevant." *Id.* at 28.

## MR. NEVES' *SECOND* FAILED ATTEMPT TO OBTAIN THE SOURCE OF FUNDS DISCOVERY IN OCTOBER 2013.

Indeed, three years later when Mr. Neves learned through discovery that Frieri stood alleged of criminal activity in Italy in matters involving Markwood and that the source of funds for the Promissory Notes could have been the profits derived from illegal bond transactions in Venezuela, Mr. Neves again sought discovery as to the source of funds for the Promissory Notes (the "Source of Funds Discovery"). (Amended Notice of Deposition of the Plaintiffs' Corporate Representatives pursuant to Federal Rule of Civil Procedure 30(b)(6) at Schedule A ¶ 12 [Adv. Pro. ECF No. 726-1]). (Trial Ex. D-8, Supplemental Interrogatory Answer 5). Furthermore, six months earlier the Italian newspapers described Frieri as an alleged Columbian drug dealer and reported that he was arrested in an undercover sting operation concerning loan sharking resulting in the assault of an Italian lawyer. (Adv. Pro. ECF No. 631 at 3 n3, Ex. A.) Previously, Frieri was also arrested in and convicted of wrongdoing in Columbia and because of an outstanding arrest warrant in Columbia, he sought permission to attend his deposition in another lawsuit by remote means. *Id*. at Ex. B.

In response, the Appellees filed their Motion for Protective Order raising a single basis for denying the Source of Funds Discovery, *to wit,* that the discovery was improper because the Bankruptcy Court had rejected the request pursuant to its March 30, 2010 oral ruling. ([Adv.

Pro. ECF No. 726] at 5).  Obviously, the Appellees completely overlooked that the March 30, 2010 ruling denying Mr. Neves' motion to compel was without prejudice to renew the motion and show the relevance of the Source of Funds Discovery.  *Id.* at 6

In opposition to the Motion for Protective Order, Mr. Neves contended, *inter alia,* that the discovery was relevant to the Plaintiffs' alleged damages, to the validity and enforceability of the Consolidated Note and the Second Note and Mr. Neves' affirmative defenses of failure to state a claim, unclean hands and *in pari delicto*. ([Adv. Pro. ECF No. 738] at 12); Transcript of Hearing on January 27, 2014 ("Jan. 27 Trans.") [Adv. Pro. ECF No. 1083:] at 36:14-18). Moreover, without the Source of Funds Discovery the court could possibly be used to launder the illicit funds ([Adv. Pro. ECF 812] at 57: 16-14).

On October 28, 2013, the Bankruptcy Court held its first hearing on the Motion for Protective Order reserving ruling as to whether Mr. Neves was entitled to the Source of Funds Discovery and requesting supplemental briefing on the issue.  (Transcript of Hearing on October 28, 2013 [Adv. Pro. ECF No. 743] at 40:18-25.)   In his supplemental response, Mr. Neves showed that the discovery established that Frieri and Markwood (not Venezuelan residents) were involved in the unauthorized and illegal purchase of Venezuelan PDVSA bonds only available to Venezuelan residents and "cédula" holders (a cédula is the identification card held by Venezuelan residents) in the primary market.  *Id.* at 3-5.  ([Adv. Pro. ECF No. 782] at 3-5).  The documents obtained through discovery confirmed that Frieri and Markwood by utilizing (and paying for) straw buyers and/or purchasing fake "cedulas" which belonged to nonexistent or deceased individuals, orchestrated the illegal purchase of the PDVSA bonds.  *Id.*  Mr. Neves also showed that Frieri (the control person for Appellants) did not pay taxes anywhere in the world. (Dec. 10 Trans. [Adv. Pro. ECF No. 812] at 43-45. At that time, Mr. Neves was **not** yet in

possession of the discovery showing that the illegal profits from sale of the PDVSA bonds were deposited in the United States.

Mr. Neves contended that the Source of Funds Discovery was necessary to show that the Promissory Notes were unenforceable as a matter of law because the enforcement of the notes violated public policy and the Promissory Notes were illegal contracts.  *Id.* at 6-8.  Also, the discovery was reasonably likely to lead to admissible evidence supporting Mr. Neves' affirmative defenses of failure to state a claim, unclean hands and *in pari delicto.  Id.* at 8-13.

The Appellees admitted that Frieri remained under house arrest in Italy and was formally charged with criminal usury.  ([Adv. Pro. ECF No. 831] at n.1); (Dec. 10 Trans. [Adv. Pro. 812] at 14-15, 16).

Notwithstanding that Mr. Neves showed both in his papers and at the continued hearing on the Plaintiffs' Motion for Protective Order that the Source of Funds Discovery was reasonably likely to lead to admissible evidence, the lower court again denied him the discovery and on January 6, 2014, with the trial looming in just six weeks, the Bankruptcy Court entered an order granting the Appellee's motion.  (Protective Order [Adv. Pro. ECF No. 827].

The Court based its decision on the "framework of the case law," noting that even if Frieri (Appellee, Golden Dawn) took the money fraudulently, the *in pari delicto* doctrine "does not recognize that as a defense."  (December 10, 2013 Hearing  Transcript [Adv. Pro. ECF No. 812] at 61-62.)  Similarly, the Court rejected the Appellant's affirmative defenses of unclean hands finding that the allegations of the Fourth Amended Complaint and affirmative defenses did

not show the "relatedness requirement" between the action because harm as to the Appellant was not proven.  *Id.* at 63.[6]

Notably, during this time, the Appellees were engaging in shenanigans concerning the availability of Frieri (Appellees' self-described "key witness") for the trial scheduled to commence on February 24, 2013.  [Adv. Pro. ECF No. 753.] Since July 2013 when Frieri was arrested in Italy, the Appellees had maintained and advised the Court that Frieri was under house arrest in Italy and that counsel was unable to communicate with Frieri except through notes passed by Frieri's Italian lawyer.  *Id.* at 8.  On October 28, 2013, counsel for the Appellees represented to the Bankruptcy Court that Frieri, was unavailable for trial because of his house arrest in Italy and continued to maintain they could not communicate with him.  *Id.*  Yet, two weeks earlier, on October 16, 2013, counsel was granted permission by the Italian court to speak directly with Frieri and to communicate with him through telephone and/or email.  ([Adv. Pro. ECF No. 753] at Ex. D.)  *See* November 25, 2013 hearing transcript at 24:16-29:9.

At a hearing held on November 25, 2013, the Bankruptcy court advised that it was "extremely concerned" about the nondisclosures by the Appellees former counsel Holland & Knight. *Id.* at 35:20-25.  At the December 10 hearing, the Bankruptcy Court advised the parties that the issue concerning the lack of disclosure and candidness concerning the availability of Frieri, Appellees' key witness, would be dealt with separately.

## MR. NEVES' *THIRD* FAILED ATTEMPT TO OBTAIN THE SOURCE OF FUNDS DISCOVERY IN JANUARY 2014.

On December 20, 2013, following the lower court's December 10, 2013 oral ruling granting the Appellees' Motion for Protective Order, several things occurred relevant to the

---

[6] The transcript mistakenly refers to "Frieri" instead of the Appellant, Mr. Neves, when discussing the harm.  *Id.* at  62:4-10.

Motion for Protective Order.  First, Frieri was formally charged with multiple crimes including criminal usury by Italian authorities and ordered to go to trial in April 2014 on these serious charges.  ([Adv. Pro. ECF No. 831] at n.1); ([Adv. Pro. ECF No. 860] at ¶ 12).  Second, the Appellees served their responses to interrogatories and requests for production which discovery responses unequivocally showed that the tainted PDVSA bonds were delivered to Markwood's broker in New York and thereafter sold on the secondary market implicating violations of United States criminal laws concerning, *inter alia,* money laundering and wire fraud.  Adv. Pro. ECF No. 860 at 5-6.  The discovery confirmed that Frieri and Markwood were engaged in criminal activity not only in Europe, but in the United States [Adv. Pro. ECF No. 860 at 5] citing [Adv. Pro. ECF No. 851 at Exhibit D]. Moreover, the  discovery showed that Frieri's (Markwood's) application to buy a U.S. brokerage firm was rejected by the regulators (FINRA) because Frieri could not demonstrate the source of funds for the purchase.  (Acosta, 845:4 to 846:16; Aguilera, 678:17-22.)  Finally, the discovery confirmed that Frieri utilized Swiss bank accounts to make the transfers which were the subject of the Fourth Amended Complaint, including to fund the Promissory Notes.  (Trial Exs. R-4, S-4, W-4, D-8 Answer to Interrogatory 2; Frieri Depo. 106:19-107:14, 355:25 to 356:20.).

Thus, Mr. Neves filed his Motion to Rehear, Alter and/or Amend Order Granting in Part and Denying in Part the Plaintiffs' Motion for Protective Order contending, *inter alia,* that the newly discovered evidence provided ample basis to find that the Source of Funds Discovery was likely to lead to admissible evidence.  [Adv. Pro. ECF No. 860].

Remarkably, the lower court denied the discovery even though the Court did not find it "illogical" that "a note would be unenforceable depending on the source of funds"  (Jan 29, 2014 transcript [Adv. Pro. ECF No. 883] at 55).   Judge Isicoff expanded on the potential

unenforceability of the Promissory Notes based on the source of funds stating, "I mean it doesn't ring untrue to me." *Id.* Yet, unable to locate a case directly on point involving a plaintiff attempting to launder dirty money through the federal courts (something unlikely to occur very often), the lower court concluded that the Promissory Notes in and of themselves were not illegal on their face and thus, Mr. Neves was not entitled to the critical Source of Funds Discovery. *Id.* at 54-56.

On February 3, 2014, the lower court entered its order denying the Motion to Rehear (the "Rehear Order"), forcing Mr. Neves to proceed to trial without the Source of Funds Discovery.

A five day trial commenced on February 24, 2014.

On December 11, 2014, the Bankruptcy Court entered its memorandum opinion followed a few days later by the entry of the final judgment in favor of Golden Dawn and against Mr. Neves on the Promissory Notes in the total amounts of $8,384,113.01.

Mr. Neves timely filed his Notice of Appeal from both the Order Granting in Part and Denying in Part Plaintiffs' Motion for Protective Order and Order Denying Defendant's Motion to Rehear, Alter and/or Amend Order Granting In Part and Denying In Part the Plaintiff's Motion for Protective Order on January 6, 2014 ("Notice of Appeal") [Adv. Pro. ECF No. 1027].

Mr. Neves also timely appealed from the Memorandum Opinion and three other orders of the lower court, all of which appeals have been transferred to Judge Marra.  Appeal Case Nos. 14-24840-KAM; 14-24841-KAM; 14-24844-KAM; 14-24846-KAM.

## **ARGUMENT**

The Federal Rules of Civil Procedure strongly favor full discovery whenever possible. *Farnsworth v. Procter & Gamble Co.,* 758 F.2d 1545, 1547 (11th Cir.1985). Courts must employ a liberal and broad scope of discovery in keeping with the spirit and purpose of these discovery rules. *Rosenbaum v. Becker & Poliakoff, P.A.,* 708 F.Supp.2d 1304, 1306 (S.D. Fla. 2010). The

Eleventh Circuit has stated that "the Judge's discovery rulings, like his other procedural determinations, are not entirely sacrosanct. If he fails to adhere to the liberal spirit of the Rules, we must reverse. "*Williams v. City of Dothan, Ala.*, 745 F.2d 1406, 1415 (11th Cir. 1984)

A party is entitled to discovery of any matter relevant to his claim or defense, and discovery requests should not be dishonored if they are reasonably calculated to lead to the discovery of admissible evidence. Fed. R. Civ. P. 26(b)(1). Indeed, the Federal Rules of Evidence define evidence as relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence." F.R.E. 401(a). Further, the Federal Rules of Civil Procedure made applicable here by the Federal Rules of Bankruptcy Procedure, require the disclosure of all relevant information so that the ultimate resolution of disputed issues in any civil action can be based on a full and accurate understanding of the true facts, and therefore embody a fair and just result. *Felker v. Zampatti*, No. 3:10–cv–459–J–32TEM, 2011 WL 6372341, at *1 (M.D. Fla. March 11, 2011) (finding that information sought by subpoena to non-party was relevant and material to the dispute in the litigation requiring immediate response).

Discovery of the source of funds of a loan was permitted in *In re American Motor Club, Inc.,* 129 B.R. 981, 989 (Bankr. E.D.N.Y. 1991), where a counterclaim alleged that the money lent was actually diverted from the company in the first place. *See also U.S. v. Bonanno Organized Crime Family of La Cosa Nostra*, 119 F.R.D. 625, 627 (E.D.N.Y. 1988) (discovery of tax returns permitted because they were relevant to prove that the Defendant did not have adequate legitimate income sources to purchase a business in support of RICO claim.)

The Source of Funds Discovery was necessary and reasonably calculated to lead to admissible evidence concerning *i)* whether the Promissory Notes violated public policy and were illegal contracts precluding their enforcement; and *ii)* the defenses of failure to state a claim, *in*

*pari delicto* and unclean hands.  The Bankruptcy Court's steadfast refusal to allow the discovery

on the ground that it was irrelevant to the claims or defenses concerning the Promissory Notes

was erroneous and is subject to *de novo* review by this Court.  The Bankruptcy Court's refusal to

permit the discovery based on its erroneous legal conclusion constituted an abuse of discretion.

## I.     THE SOURCE OF FUNDS DISCOVERY WAS REASONABLY CALCULATED TO LEAD TO ADMISSIBLE EVIDENCE CONCERNING WHETHER THE PROMISSORY NOTES VIOLATED PUBLIC POLICY AND WERE UNENFORCEABLE.

Under both federal and state law, illegal agreements, as well as agreements contrary to

public policy, have long been held to be unenforceable and void. *See Kaiser Steel Corp. v.*

*Mullins,* 455 U.S. 72, 77.  Courts have an "affirmative duty" to avoid permitting a person who

violates public policy to obtain any "benefits" from his wrongdoing.  *Local No. 234 v. Henley &*

*Beckwith, Inc.* 66 So. 2d 818, 821 (Fla. 1953).  Indeed, courts should be "loathe to lend their

support or give their approval to any obligation which has an unlawful transaction as its genesis."

*Frye v. Taylor,* 263 So.2d 835, 840 (Fla. 4th DCA 1972) (It would be "contrary to reason and

public policy" to enforce a promissory note given by the lender in consideration of the borrower's

participation in an illegal transaction finding the note a nullity and of no legal effect.)

Similar to the Promissory Notes, the agreements in *Neiman v. Provident Life & Accident*

*Ins. Co.*, 217 F. Supp. 2d 128 (S.D. Fla. 2002) (Moreno, J), *Title & Trust Co. of Fla. v. Parker,*

468 So. 2d 520, 521 (Fla. 1st DCA 1985) and *S.E.C. v. Comcoa Ltd.*, 887 F. Supp. 1521, 1524

(S.D. Fla. 1995), were *not* invalid on their face.  Yet, the Courts refused to enforce the contracts

based on illegality and public policy concerns.

This Court in *Neiman,* found that allowing claims founded in criminal conduct would

"legitimize the activity" and is against public policy.  *Neiman*, 217 F. Supp 2d at 1286-87.  In

determining whether an insured who engaged in the unlicensed practice of law could collect on a

disability policy which was not illegal on its face, or at least receive repayment of his premiums, the court offered the following analogy which applies with equal force here:

> Without question, it would be contrary to public policy to enforce a contract indemnifying an assassin who could no longer perform his "occupation." Assuming prostitution is illegal in a particular state, it would violate public policy to enforce an insurance policy providing benefits to a prostitute who can no longer ply her trade. Likewise, enforcement of the policy here would validate a condition of coverage founded in illegality.

*Id.* at 1286.  The Court refused to enforce the disability policy finding it violated public policy. *Id.* at 1288.

In *Parker,* the insured could not recover the face value of a title policy from the title company even though it was not invalid on its face because the underlying loan transaction for the purchase of the real property was usurious and illegal.  *Parker*, 468 So. 2d at 523-524.  The Florida court reasoned that "there can exist no legal remedy for that which is itself illegal.  *Id.* (citations omitted).

Where a contract does not violate public policy on its face, the circumstances surrounding the contract's enforcement can cause the contract to be unenforceable.  *Comcoa Ltd.*, 887 F. Supp. at 1524. In *Comcoa*, an attorney entered into a nonrefundable retainer agreement with its client, the defendant in the S.E.C. enforcement action.  The Court acknowledged that the retainer agreement was valid under Florida law. *Id.* at 525.  However, because the nonrefundable nature of the lawful retainer agreement interfered with the S.E.C.'s ability to freeze the defendant's assets, the court held that the agreement violated public policy and was void. *Id.*

In *Katz v. Woltin*, 765 So. 2d 279, 280-81 (Fla. 4th DCA 2000), the Florida's Fourth District Court Of Appeals refused to overturn the lower court's grant of summary judgment in favor of the defendant on the Plaintiff's claims for, *inter alia,* breach of contract, fraudulent

inducement, and rescission, finding that the underlying contract forming the basis for all of the claims was illegal.   *See also One Harbor Financial Ltd. Co. v. Hynes Properties, LLC*, 884 So. 2d 1039, 1045 (Fla. 5th DCA 2004) ("The right to contract is subject to the limitation that the agreement must be legal.").  Indeed, Florida courts hold that "[t]here is no legal remedy for that which is illegal itself." *D & L Harrod, Inc. v. U. S. Precast Corp.*, 322 So. 2d 630, 631 (Fla. 3d DCA 1975) (where plaintiff was not properly certified to engage in hauling operations contracted for, as statute required, court held the contract was unenforceable as contrary to public policy) (citations omitted).

Other states also refuse to allow their Courts to be used to further public policy violations.  The lawsuit in *Al-Ibrahim v. Edde,* 897 F. Supp. 620, 621-22 (D.C.D.C. 1995), arose from an  employment relationship between the plaintiff and defendant requiring the plaintiff to fraudulently claim, for tax purposes, credit for the defendant's gambling winnings.  In return, the defendant orally promised to reimburse the plaintiff for the tax liability incurred from the declared winnings.  *Id.* at 621.  The Court found the oral contract void and unenforceable refusing to allow the parties to use the courts in violation of public policy to resolve disputes over the parties "illegal undertaking"  *Id.* at 622-23.  *See also Wilson v. Steele,* 211 Cal. App. 3d 1053, 1059 (Cal. Ct. App. 1989), opinion modified, (July 19, 1989) (Case remanded for determination as to whether promissory note and deed of trust were unenforceable under state statute precluding their enforcement by holder in due course.)

The Bankruptcy Court entered the Protective Order ignoring Frieri's criminal history and house arrest in Italy, that he orchestrated the illegal purchase of Venezuelan bonds and that he did not pay any taxes world-wide all of which supported allowing the discovery.  Trial Ex. D-8 Supplemental Interrog. Answers 5.   Notably, rather than totally chill the discovery, the

Bankruptcy Court had an affirmative obligation to permit the discovery thereby assuring that the underlying "loans" evidenced by the Promissory Notes were not funded through "dirty" money obtained through criminal activity and that the enforcement of the Promissory Notes did not legitimize criminal activity.

On rehearing, the court erred by failing to permit the discovery based on the newly discovered evidence showing that Frieri through his company Markwood delivered to a U.S. Broker in New York the tainted bonds illegally purchased in Venezuela through straw men, that the Promissory Notes were funded through Swiss accounts, and that Frieri's attempt to purchase a broker dealer through Appellee/Markwood (an affiliate of Golden Dawn) was squelched because he could not provide the source of funds for the purchase. Furthermore, the court was unswayed even though Frieri remained under house arrest in Italy and now stood formally indicted in Italy on charges stemming from criminal usury. Undoubtedly, the new evidence more than adequately demonstrated the likelihood that the Promissory Notes were illegal and/or void based on public policy violations.

The denial of the Motion to Rehear because there was no case law  concerning the unenforceability of contracts that are not illegal on their face was clearly in error because as shown above, such case law exists. Moreover, lack of case law is not a proper basis to deny relief. *See generally Truswal Sys. Corp. v. Hydro-Air Eng'g, Inc.*, 813 F.2d 1207, 1210-11 (Fed. Cir. 1987) (Federal Circuit Court held that it was an abuse of discretion for lower court to deny discovery on the grounds that the plaintiff was unable to cite any case dealing with the discovery of such information.)

Mr. Neves was extremely prejudiced by the entry of the Protective Order which totally hindered his ability to defend against enforcement of the Promissory Notes. The Bankruptcy

Court determination that the discovery was not relevant to showing that the Promissory Notes were unenforceable was erroneous and is subject to *de novo* review.  The lower court abused its discretion and ignored its obligation to liberally and freely allow discovery and the entry of the Protective Order and Rehear Order  should be reversed.

## II.   THE SOURCE OF FUNDS DISCOVERY WAS RELEVANT TO THE AFFIRMATIVE DEFENSES OF *IN PARI DELICTO* AND UNCLEAN HANDS AND WAS REASONABLY CALCULATED TO LEAD TO ADMISSIBLE EVIDENCE CONCERNING THOSE DEFENSES.

Mr. Neves' affirmative defenses of *in pari delicto* and unclean hands put Appellant/Golden Dawn on notice that Mr. Neves intended to defend against enforcement of the Promissory Notes by showing, *inter alia,* that the Appellee/Golden Dawn engaged in unlawful conduct as to the Promissory Notes. *See* Fed. R. Bankr. P. 8 (notice Pleading rules). Importantly, the Appellants never moved to strike any of Mr. Neves affirmative defenses.

### A.   The Source Of Funds Discovery Was Relevant And Reasonably Calculated To Lead To The Discovery Of Admissible Evidence Concerning The Appellant's Properly Pled Affirmative Defense Of *In Pari Delicto*.

The equitable defense of *in pari delicto*, literally meaning "in equal fault," is rooted in  common law and the notion that a plaintiff's recovery may be barred by his own wrongful conduct. *Pinter v. Dahl*, 486 U.S. 622, 632 (1988).   Federal courts apply the in pari delicto defense to bar suits by plaintiffs who are found to have participated in wrongdoing as well. *James v. DuBreuil*, 500 F. 2d 155, 158 (5th Cir. 1974) (holding that the district court properly applied the defense of in pari delicto to bar maintenance of plaintiff's suit where plaintiff participated in fraudulent transaction with intention to violate securities laws).   Although on notice of the relevant *in pari delicto* affirmative defense,  the Appellees strenuously objected to the Source of Funds Discovery.  Inexplicably, the lower court found as a matter of law that the

discovery was not relevant to the *in pari delicto* defense reasoning that the pleadings failed to allege the exact nature of the wrongdoing by the parties as to the Promissory Notes.

Clearly, the lower court put the cart before the horse by requiring that Mr. Neves provide evidence of the misconduct of Golden Dawn as to the Promissory Notes *before* he could obtain the very discovery that was likely to lead to admissible evidence concerning the misconduct. The Bankruptcy Court somehow ignored that the discovery, in light of Frieri's criminal activities, should be freely permitted. Indeed, the Source of Funds Discovery was designed to show that the Promissory Notes were funded with "dirty" money and that the Bankruptcy Court was being used to illegally launder monies in violation of criminal statutes.

Importantly, "[e]ven if the parties did not participate in the *same* wrongdoing, Florida follows a general principle that no one shall be permitted to profit by his own fraud, or take advantage of his own wrong, or found any claim upon his own iniquity, or profit by his own crime." *In re Gosman*, 382 B.R. 826, 838 (S.D. Fla. 2007) (quoting *May v. Nygard Holdings Ltd.*, Case No. 6:03-CV-1832-Orl-DAB, 2007 WL 2120269, at *4 (M.D. Fla. July 20, 2007)) (emphasis in original). Significantly, the United States District Court for the Southern District of Florida explained:

> In determining whether *in pari delicto* applies, "a courts first determines whether the plaintiffs guilt is far less in degree than defendant's, so as to make the doctrine inapplicable. If plaintiffs guilt is not far less, the court inquires if applying the doctrine would be contrary to public policy."

Moreover, in *Nisselson v. Lernout*, 469 F.3d 143 (1st Cir. 2006), the Court explained that the doctrine of *in pari delicto* applies to situations in which "(i) the plaintiff, as compared to the defendant, bears at least substantially equal responsibility for the wrong he seeks to redress and

(ii) preclusion of the suit would not interfere with the purposes of the underlying law or otherwise contravene the public interest." *Id.* at 152 (citations omitted).

Although case law exists and is cited herein demonstrating the unenforceability of a facially valid contract where the genesis or underlying transaction is illegal, the Bankruptcy Court found that the discovery was impermissible because at that time the Court could not locate case law concerning the unenforceability of a promissory note and the parties had not provided case law directly on point involving a facially legal contract that was illegal and/or violated public policy. The foregoing constituted an abuse of discretion. *See generally Truswal Sys. Corp.*, 813 F.2d at 1210. Likewise, the sparse case law on the issue is predictable because most criminals do not seek to enforce Promissory Notes funded by monies obtained through illegal activity in the federal courts.

Finally, the Court's determination that the defense of *in pari delicto* was inapplicable under the facts does not pass muster as the facts could not be developed without the benefit of the Source of Funds Discovery. The discovery was critical to show Golden Dawn's guilt.

**B.    The Discovery Was Reasonably Calculated To Lead To Admissible Evidence Supporting Mr. Neves' Unclean Hands Defense Which He Is Entitled To Assert.**

A court of equity cannot assist those seeking equitable relief when they have unclean hands. *See, e.g., Hauer v. Thum*, 67 So. 2d 643, 645 (Fla. 1957) (Supreme Court of Florida refused to allow equity to be used to grant equitable relief to the parties in a suit, wherein both parties, one being the contractor to build a home for the other party, defrauded the lender in obtaining a construction loan by falsifying the construction costs in order to obtain a federal loan); *Marcel v. Marcel*, 132 So. 2d 210, 211 (Fla. 2d DCA 1961) (equity will not lend its aid in any manner to one who has been guilty of unlawful or inequitable conduct in a transaction from

which he seeks relief, nor to one who has been a participant in a transaction the purpose of which was to defraud a third person, to defraud creditors, to defraud the government, nor to a party to a transaction whose purposes is violative of public policy); *Slizyk v. Smilack*, 825 So. 2d 428, 430-31 (Fla. 4th DCA 2002) (court of equity will not assist in extricating a party from his or her own wrongful or fraudulent conduct).

Mr. Neves provided evidence showing that Frieri engaged in unlawful activity, that he was unable to demonstrate the source of funds in his bid to purchase a U.S. broker dealer, that the Promissory Notes were funded through a Swiss account and that Frieri paid no taxes. Clearly, the Source of Funds Discovery was relevant to showing that the Promissory Notes were funded with ill-gotten gains, supporting Mr. Neves' affirmative defense of unclean hands. Yet, because the pleadings did not show the precise misconduct of Golden Dawn and case law was sparse, the Court denied the discovery. Again, it is unsurprising that Golden Dawn did not disclose in its complaint that the notes were funded with money it hoped to launder though the Bankruptcy Court. Nor, was Mr. Neves obligated to plead the exact nature of the unclean hands in his affirmative defense which spans over one page and is replete with case law examining factual situations in an effort to demonstrate the viability of the defense. After all, that is the purpose of pretrial discovery.[7]

Below, the Appellees contended that the offending conduct and the subject of the disputed discovery requests were unrelated to the claims in the lawsuit and thus could not be asserted for purposes of an "unclean hands" defense. Appellees relied on *Tancogne v. Tomjai Enterps. Corp.*, 408 F. Supp. 2d 1237 (S.D. Fla. 2005), an inapposite case concerning the defendant's alleged trademark infringement and its improper assertion of "unclean hands"

---

[7] As discussed *supra*, it is an abuse of discretion to deny discovery because of a lack of case law concerning the claimed misconduct.

concerning the plaintiff's alleged infringement of another trademark belonging to the defendant. *Id.* at 1253. The Court found that the infringement of a completely different mark, unrelated to the case at bar, and one which was the subject of another lawsuit, could not support an "unclean hands" defense. *Id.* at 1253-54. Similarly, the Appellees' reliance below on *Grimes Contracting, Inc. v. Grimes Util., Inc.*, No. 3:08-cv-965-J-16MCR, 2009 WL 88571 (M.D. Fla. Jan. 14, 2009), another trademark infringement case, was misplaced. In that case, the party's attempts to establish "unclean hands" proved unsuccessful because the bases for same were wholly unrelated to the infringement claim at issue. *Id.* at * 3-4.

The Bankruptcy Court erroneously found that the discovery was not relevant to Mr. Neves' properly pled defenses of *in pari delicto* and unclean hands which legal conclusions are subject to *de nevo* review. The lower Court abused its discretion in denying the discovery.

## III.  THE BANKRUPTCY COURT ERRED IN DENYING THE DEFENDANT'S MOTION TO REHEAR, ALTER AND/OR AMEND BASED ON NEWLY DISCOVERED EVIDENCE .

A motion for reconsideration of an order may be brought pursuant to Federal Rule of Civil Procedure 59(e) made applicable to the Bankruptcy Court by Federal Rule of Bankruptcy Procedure 9023. *Lewis v. United States Postal Service*, 840 F.2d 712, 713 n. 1 (9th Cir. 1988). Although Rule 59(e) "does not delineate the available grounds for relief under that section, courts have generally granted relief to (1) account for an intervening change in controlling law, (2) consider newly available evidence, or (3) correct clear error or prevent manifest injustice." *In re Continuum Care Services, Inc*., 398 B.R. 708, 711 (Bankr. S.D. Fla. 2008) (citing *Sussman v Salem, Saxon & Nielsen, P.A*., 153 F.R.D. 689, 694 (M.D. Fla. 1994)). Whether or not to reconsider an order is in the discretion of the court. *In re Horlacher*, 389 B.R. 257, 261 (Bankr. N.D. Fla. 2008). However, a bankruptcy court's denial of a motion for reconsideration or

rehearing will be reversed upon a finding by the District Court that the denial was an abuse of discretion.  *In re Int'l Yacht and Tennis, Inc.*, 922 F. 2d 659, 662 (11th Cir. 1991).

On rehearing, Mr. Neves demonstrated that newly discovered (described *supra*) evidence obtained in discovery following the hearing on the Motion for Protective Order warranted granting his Motion for Rehearing.  Yet, the Court continued to deny the discovery because of the lack of case law concerning contracts, legal on their face, that violated public policy.  This strict and narrow approach to pretrial discovery adopted below contradicts the federal court's liberal approach of freely allowing discovery.  In any event, case law exists.  *See Supra* at 15.

The newly discovered evidence, including Frieri's criminal indictment for usury, his delivery to a U.S. broker of bonds purchased illegally in Venezuela and his inability to explain the source of funds for monies to purchase a broker dealer in the U.S., amply demonstrated that the Protective Order should be vacated and the Motion To Rehear granted.

The Bankruptcy Court's denial of the Motion to Rehear constituted an abuse of discretion and should be reversed.

## CONCLUSION

Based upon the foregoing arguments and authorities, Appellant, Fabrizio Dulcetti Neves, respectfully requests entry of an order reversing the Bankruptcy Court's entry of the Protective Order and Order denying the Motion to Rehear and remanding the case to the Bankruptcy Court for the purpose of permitting Mr. Neves to conduct discovery as to the Source Of Funds of the Promissory Notes and for additional proceedings concerning the enforceability of the Promissory Notes, awarding the Appellant its costs incurred in this appeal pursuant to Federal Rule of Bankruptcy Procedure 8014, and for such additional relief as may be just and equitable.

Respectfully submitted,

**AKERMAN LLP**
One Southeast Third Avenue
25th Floor
Miami, Florida 33131-1714
Phone: (305) 374-5600
Fax: (305) 374-5095

By: /s/  *Joanne Gelfand*
          Joanne Gelfand, Florida Bar No. 515965
          E-mail: joanne.gelfand@akerman.com
          Michael B. Chavies, Florida Bar No. 191254
          E-mail:  michael.chavies@akerman.com
          Brian P. Miller, Florida Bar No. 980633
          E-mail:  brian.miller@akerman.com
          Ilana Tabacinic, Florida Bar No. 57597
          E-mail:  ilana.tabacinic@akerman.com

*Attorneys for Appellant Fabrizio Dulcetti Neves*

<u>**CERTIFICATE OF SERVICE**</u>

**I HEREBY CERTIFY** that on January 16, 2015, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day by transmission of Notices of Electronic Filing generated by CM/ECF to those parties registered to receive electronic notices of filing in this case.

By: *<u>/s/ Joanne Gelfand</u>*
Joanne Gelfand