**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No.**

**1:14-cv-24842-FAM**

---

**FABRIZIO DULCETTI NEVES,**

**Appellant**
**v.**
**MARKWOOD INVESTMENTS LTD and GOLDEN DAWN CORPORATION,**

**Appellees**

---

**Appeal from the United States Bankruptcy Court for the Southern District of Florida**
**Bankruptcy Case No. 10-AP-02122-LMI**

---

**REPLY BRIEF OF APPELLANT, FABRIZIO DULCETTI NEVES**

---

Joanne Gelfand
Florida Bar No. 515965
Michael B. Chavies
Florida Bar No. 191254
Brian P. Miller
Florida Bar No. 980633
Ilana Tabacinic
Florida Bar No. 57597
**Akerman LLP**
One Southeast Third Avenue
25th Floor
Miami, Florida 33131-1714
Phone: (305) 374-5600
Fax: (305) 374-5095
joanne.gelfand@akerman.com
michael.chavies@akerman.com
brian.miller@akerman.com
ilana.tabacinic@akerman.com
*Attorneys for Appellant Fabrizio Dulcetti Neves*

## TABLE OF CONTENTS

**Page**

ARGUMENT .............................................................................................................. 2

I.     MR. NEVES PROPERLY RAISED BELOW AND PRESERVED FOR APPEAL THE DEFENSES OF PUBLIC POLICY VIOLATION AND ILLEGALITY OF CONTRACT ............................................................................................................. 1

II.    THE SOURCE OF FUNDS OF THE PROMISSORY NOTES IS DIRECTLY RELATED TO AND ABSOLUTELY RELEVANT TO THE DEFENSES OF PUBLIC POLICY VIOLATION AND ILLEGALITY ....................................... 4

       A.     The Source of Funds Discovery is Reasonably Likely to Lead to Admissible Evidence Relating to Violations of Criminal Statutes ................................... 4

       B.     The Source of Funds Discovery is Reasonably Likely to Lead to Admissible Evidence Demonstrating That the Promissory Notes Are Unenforceable Because of Public Policy Violations and Illegality .................................... 6

       C.     The Source of Funds Discovery is Reasonably Likely to Lead to Admissible Evidence Demonstrating That the Promissory Notes Are Unenforceable Based on the Defenses of Unclean Hands and *In Para Delicto* .................................... 8

CONCLUSION ......................................................................................................... 11

CERTIFICATE OF SERVICE ................................................................................. 12

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*ABM Financial Serv., Inc. v. Express Consolidation, Inc.*,
    Case No. 07-60294, 2008 WL 1776595 (S.D. Fla. April 17, 2008) ..................................9, 11

*Adkins v. Christie*,
    488 F.3d 1324 (11th Cir. 2007) ........................................................................................8

*Barnard v. Gateway Bank, FSB (In re Ideal Mtg. Bankers, Ltd)*,
    Case No. 10-79280-dte, 2013 WL 6813737 (E.D.N.Y. Dec. 23, 2013) ...................................7

*Bild v. Konig*,
    09-CV-5576(AR) (VVP), 2014 WL 3015236 (E.D.N.Y. July 3, 2014) ................................7

*Carlow v. Colonial Bank, N.A.*,
    370 B.R. 402 (Bankr. S.D. Fla. 2007) ............................................................................7

*Contemporary Mission, Inc. v. Bonded Mailings, Inc.*,
    671 F.2d 81 (2d Cir. 1982) .............................................................................................7

*Coppell v. Hall*,
    74 U.S. 542 (1868) .........................................................................................................6

*Donahay v. Palm Beach Tours & Transp., Inc.*,
    242 F.R.D. 685 (S.D. Fla. 2007) ....................................................................................9

*Hassan v. U.S. Postal Serv.*,
    842 F.2d 260 (11th Cir. 1988) ........................................................................................3

*In re Newpower*,
    233 F.3d 922 (6th Cir. 2000) ..........................................................................................7

*Jones v. Miles*,
    656 F.2d 103 (5th Cir. Unit B 1981) ..............................................................................3

*Key Components, Inc. v. Edge Electronics, Inc.*,
    Case No. 3:07-CV-224, 2008 WL 4937560 (E.D. Tenn. 2008) ...........................................10

*Nalco Chemical Co. v. Hydro Technologies, Inc.*,
    148 F.R.D. 608 (E.D. Wis. 1993) ..................................................................................9

*Nathan v. Tenna Corp.*,
    560 F.2d 761 (7th Cir. 1977) ......................................................................................6, 7

*Neiman v. Provident Live & Accident Insurance Co.*,
    217 F. Supp. 2d 1281 (S.D. Fla. 2002) (Moreno, J.) ...........................................................10

*Oppenheimer Fund, Inc. v. Sanders*,
    437 U.S. 340 (1978).........................................................................................................9, 10

*United States v. Bonanno Organized Crime Family of La Cosa Nostra*,
    119 F.R.D. 625 (E.D.N.Y. 1988) ...........................................................................................5

*Yessenow v. Hudson*,
    270 F.R.D. 422 (N.D. Ind. 2010) ...........................................................................................8

**Statutes**

18 U.S.C. § 1028...........................................................................................................................6

18 U.S.C. § 1343...........................................................................................................................6

18 U.S.C. § 1956...........................................................................................................................6

18 U.S.C. § 1957...........................................................................................................................6

18 U.S.C. §§ 1961 *et seq*............................................................................................................5

U.C.C. § 4-101..............................................................................................................................7

**Rules**

Fed. R. Bankr. P. 8014(b) .............................................................................................................1

Fed. R. Bankr. P. 8021 ................................................................................................................11

Fed R. Civ. P. 26(b)(1)..................................................................................................................9

## ARGUMENT

The Appellee is satisfied with and does not contest Mr. Neves'[1] statement of the facts or standard of review.   *See* Fed. R. Bankr. P. 8014(b).   Nor, does the Appellee provide any meaningful distinction of the decisions relied upon by Mr. Neves demonstrating that the Source of Funds Discovery was relevant and should have been permitted.   Although the Appellee spews case law spanning over a century, as shown below, these decisions are either inapposite or distinguishable.

The defenses of public policy violation and illegality were properly before the Court when Mr. Neves initially challenged the Motion For Protective Order and Golden Dawn was on notice of the defenses.   Finally, at the discovery stage, Mr. Neves was not burdened with demonstrating the viability of his affirmative defenses of unclean hands and *in para delicto*.   The purpose of the Source of Funds Discovery was to obtain the information needed to provide Mr. Neves the opportunity to prove his defenses.

I.   **MR. NEVES PROPERLY RAISED BELOW AND PRESERVED FOR APPEAL THE DEFENSES OF PUBLIC POLICY VIOLATION AND ILLEGALITY OF CONTRACT.**

Appellee's contention that Mr. Neves failed to plead the defenses of illegality and violation of public policy is incorrect.   In his Answer, Affirmative Defenses and Demand for Jury Trial, Mr. Neves pled these and other affirmative defenses and put Golden Dawn on notice of his intention to defend on the grounds of illegality and public policy violation.   Indeed, the affirmative defense titled "UNCLEAN HANDS," includes a page of case citations and parentheticals detailing the nature of the affirmative defenses, including public policy violations and illegality as follows:

---

[1] All defined terms will have the same meaning as set forth in Mr. Neves' Initial Brief. [ECF No. 16]

*Marcel vs. Marcel*, 132 So. 2d 210, 211 (Fla., 2nd DCA 1961) **(equity will not lend its aid in any manner to one who has been guilty of unlawful or inequitable conduct in a transaction from which he seeks relief,** nor to one who has been a participant in a transaction the purpose of which was to defraud a third person, to defraud creditors, to defraud the government, **nor to a party to a transaction whose purposes is violative of public policy.**

. . .

*See, e.g., Hauer vs. Thum*, 67 So.2d 643, 645 (Fla. 1957) (Supreme Court of Florida refused to allow equity to be used to grant equitable relief to the parties in a suit, wherein both parties, one being the contractor to build a home for the other party, defrauded the lender in obtaining a construction loan by falsifying the construction costs in order to obtain a federal loan;

. . .

*United States Gypsum Company vs. National Gypsum Company*, 352 U.S. 457, 465 (1957), *Slizyk vs. Smilack*, 825 So.2d 428, 430-31 (Fla. 4th DCA 2002) (court of equity will not assist in extricating a party from his or her own wrongful or fraudulent conduct), *Faber vs. Landman*, 123 So.2d 405, 408 (Fla. 2nd DCA 1960) (there is no bar to applying the doctrine of unclean hands in a case where the plaintiff and defendant are both parties to a fraudulent transaction or where the fraud is perpetrated on a third party). Even if the actions were not illegal or void, a court of equity shall not lend its aid to an actor with unclean hands. *See*, Hauer at 645. **It is believed that Salvatore Frieri is using shell companies (Plaintiffs) to both avoid taxation on his ill-gotten wealth in both Colombia and Italy, and he has defrauded other third parties of their monies and wealth and then used those same monies he defrauded others of for his own personal gain and profit; by among other things, transferring same through the various persons and entities he has named in the Fourth Amended Complaint, so as to appear as if this is his money. The sued upon monies herein do to the Plaintiffs, nor even Salvatore Frieri, but are monies of others who have a superior interest in same.**

Answer at pp. 10-11 [Adv. Pro. ECF. No. 511]  (emphasis supplied).[2]

---

[2] Citation to the record will be as follows: Docket entries in this Court will be cited as [ECF No._]. References to docket entries in the Adversary Proceeding below will be cited as [Adv. Pro. ECF No. __]. References to trial testimony will be cited as Name, page:line. References to deposition testimony will be cited as Name Depo., page:line. References to Trial Exhibits will be cited as Trial Ex.

Seemingly, Appellee believes that Mr. Neves should have pled a separate affirmative defense concerning illegality and public policy violations.  However, the Appellee does not claim lack of notice of the defenses which were clearly set forth within the unclean hands defense.  Likewise, Mr. Neves' denial of the allegations set forth in the Fourth Amended Complaint purporting to establish a *prima facie* case for enforcement of the Promissory Notes also put Appellee on notice of the fact that Mr. Neves deemed the notes unenforceable and that he denied that the Appellee incurred damages on the note claims. [Adv. Pro. ECF No. 511]. Further, as Appellee notes, Mr. Neves reserved his right to add to or amend the affirmative defenses, which he could have done had he not been flatly denied the right to the Source of Funds Discovery.  Notably, the Appellee did not move to strike the affirmative defenses of illegality or public policy violations, or for a more definite statement concerning these defenses and Appellee cannot now claim it lacked enough specificity concerning same.[3]

Similarly, the Appellee's contention that the defense of illegality was raised for the first time in the Rehear Motion is incorrect.  (Answer Brief [ECF No. 24] at 4).  Mr. Neves originally raised the illegality defense as a basis for the Source of Funds Discovery in opposition to the Plaintiffs' Motion for Protective Order wherein he spent pages urging the lower court to permit the discovery because it was "reasonably calculated to lead to admissible evidence showing that the promissory notes were funded for the purpose of legitimizing and laundering money obtained

---

[3]*See, e.g., Hassan v. U.S. Postal Serv.*, 842 F.2d 260, 263 (11th Cir. 1988) ("[W]hen the failure to raise an affirmative defense does not prejudice the plaintiff, it is not error for the trial court to hear evidence on the issue."). Formally setting forth affirmative defenses is a technicality that will not serve to waive a defendant's right to a certain defense where the plaintiff cannot claim surprise.  *Id.* (citing *Jones v. Miles*, 656 F.2d 103, 107 n. 7 (5th Cir. Unit B 1981)).  Accordingly, even if the affirmative defenses were somehow lacking (they were not), Mr. Neves still should have been entitled to discover the subject information.

through illegal activity."  *See* Mr. Neves' Response to Plaintiff's Supplemental Filing Regarding Source of Funds at 2 *et seq.*   [Adv. Pro. ECF No. 782].[4]

Finally, the discovery cut-off was not an issue raised below and the request was made well within the discovery cut-off at the time.  Also, the discovery cut-off was extended at Plaintiffs' (Appellee) request through January 22, 2014.[5]  [Adv. Pro. ECF No. 822].

## II.  THE SOURCE OF FUNDS OF THE PROMISSORY NOTES IS DIRECTLY RELATED AND ABSOLUTELY RELEVANT TO THE DEFENSES OF PUBLIC POLICY VIOLATION, ILLEGALITY, UNCLEAN HANDS AND *IN PARA DELICTO.*

Appellee brashly contends that the Source of Funds Discovery is irrelevant to Mr. Neves' defense to enforcement of the Promissory Notes.  As demonstrated in Mr. Neves' Initial Brief and below, the Source of Funds Discovery is likely to lead to admissible evidence showing that: *i)* the monies used to fund the Promissory Notes were derived from illegal activity both in the U.S. and Venezuela; and, *ii)* the Promissory Notes are void (or voidable) and unenforceable based on public policy violations and the defenses of unclean hands and *in pari delicto.*

### A.  The Source of Funds Discovery is Reasonably Likely to Lead to Admissible Evidence Relating to Violations of Criminal Statutes.

Appellee contends that even if the bond transactions were illegal, there was no wrongdoing because the Federal Money Laundering Statute does not cover currency laws and tax evasion violations.  However, whether the law was broken is a question for another day after the discovery is completed. The Federal Rules of Civil Procedure do not require Mr. Neves to prove the violation of a United States Federal Money Laundering law or any other criminal

---

[4] The illegality defense was also raised in Mr. Neves' Memorandum of Law in Opposition to Plaintiffs' Motion For Protective Order Concerning Their Corporate Representatives as to the damages claimed based on the alleged fraud ([Adv. Pro. ECF No. 738] at 12) (the Source of Funds Discovery is necessary to determine "Plaintiffs legal title to the monies" in connection with enforcement of the Promissory Notes).
[5] Nor, may the Appellee rely on the lower court's prejudicial  *dicta* concerning the $8.5 million as the issue of theft was not before the Court and the Plaintiffs below were unsuccessful on their fraud claim.  *See* (Memorandum Opinion [Adv. Pr. ECF No. 1014] at 9) (Court notes that "the Plaintiffs have not sought recovery based on theft" showing that the remarks were *dicta*).

statutes before he is entitled to the discovery of the unlawful activity in question.  Indeed, in *United States v. Bonanno Organized Crime Family of La Cosa Nostra*, 119 F.R.D. 625 (E.D.N.Y. 1988), the Court allowed discovery of tax returns in a civil RICO litigation where the government argued generally that the individual had no legitimate income and had "no legitimate business or commercial dealings with the other defendants in the instant action." *Id.* at 627.  The government merely argued that it believed the defendant received income from rackeetering activity.  Accordingly, the Appellee's argument fails.

Mr. Neves presented sufficient evidence below of unlawful conduct by the Appellee, Frieri and/or Markwood, supporting his request for the Source of Funds Discovery.  Indeed, Mr. Neves demonstrated below that unless Markwood or Golden Dawn was incorporated under the laws of Venezuela or had a subsidiary in Venezuela by March 2007, or Frieri was a Venezuelan citizen, they were not legally entitled to buy the bonds that were purchased on the primary market.  Additionally, Mr. Neves argued that the bonds themselves were acquired by fraudulent means (using fraudulently obtained or false identification cards) and with illegally obtained funds (proceeds of tax evasion and funds exchanged in the black market).  ([Adv. Pro. ECF No. 782] at 2).  Critically, the bonds were then transmitted to the United States implicating violations of United States money laundering, wire fraud, fraud, racketeering and identity theft laws. ([Adv. Pro. ECF No. 812] at 41:15-16). It is with this background of significant illegal behavior that Mr. Neves intended to prove that the funds for the Promissory Notes were tainted and that the source of said funds were illegal bond purchases, violations of currency and tax laws, and other criminal acts.  ([Adv. Pro. ECF No. 812] at 47). Certainly, this plethora of illegal conduct constituted more than enough evidence to demonstrate Mr. Neves' **entitlement** to discovery reasonably calculated to lead to admissible evidence as to whether the moneys funding the Promissory Notes

were tainted and obtained through criminal conduct. Indeed, this discovery was relevant to whether the Appellee was attempting to use Mr. Neves and the Court as conduits in its scheme to clean its ill-gotten monies.[6] ([Adv. Pro. ECF No. 812] at 57:6-14).

**B.    The   Source   of   Funds   Discovery   is   Reasonably   Likely   to Lead to Admissible Evidence Demonstrating That the Promissory Notes Are Unenforceable Because of Public Policy Violations and Illegality.**

Mistakenly, the Appellee labels as "obviously illegal" the facially legal yet unenforceable contracts at issue in the decisions relied upon by Mr. Neves. *See* Answer Brief at 10; Initial Brief at 14-15. The inapposite authority set forth by the Appellee does not negate Mr. Neves' showing that the Source of Funds Discovery was likely to lead to admissible evidence related to his defenses, including that the Promissory Notes were unenforceable illegal contracts that violated public policy.

For instance, the decision in *Nathan v. Tenna Corp.*, 560 F.2d 761 (7th Cir. 1977), supports Appellant's position that he was wrongfully deprived of the Source of Funds Discovery. *Id.* at 765. In *Nathan,* the plaintiff sued for unpaid commissions under his contract with the defendant. Critically, the plaintiff engaged in illegal commission splitting with the defendant's buyer, resulting in a conviction for mail fraud. *Id.* at 764-65. Reasoning that a bargain is illegal "if either its formation or its performance is criminal, tortious or otherwise opposed to public policy," the Court refused to find the commission splitting sufficiently remote from the claim. *Id.* at 764. Although not a discovery case, the Court seemingly recognized the import of unfettered discovery reflecting that "whether the *evidence* comes from one side or the other," disclosure of an illegality is "fatal to the case." *Id.* at 763 (citing *Coppell v. Hall,* 74 U.S. 542,

---

[6] As Mr. Neves argued below, and contrary to Plaintiffs' argument, there is plenty of evidence to support allegations of criminal conduct. To wit, violations of 18 U.S.C. § 1956 (Laundering of monetary instruments with various specific unlawful activities) and 18 U.S.C. § 1957 (Engaging in monetary transactions in property derived from specified unlawful activity), 18 U.S.C. § 1343 (Fraud by wire, radio, or television) and 18 U.S.C. § 1028 (Fraud and related activity in connection with identification documents, authentication features, and information) among others.

588-89 (1868)) (emphasis supplied). *See also Barnard v. Gateway Bank, FSB (In re Ideal Mtg. Bankers, Ltd)*, Case No. 10-79280-dte, 2013 WL 6813737, at *6 (E.D.N.Y. Dec. 23, 2013) (Given the opportunity to present evidence, the defendant may establish a closer nexus sufficient to sustain the illegality defense but at the motion to dismiss stage, the defendant was unable to show that its agreement to increase credit limit on Warehouse Line was tainted by the plaintiff's illegal use of monies previously funded.). *Cf. Contemporary Mission, Inc. v. Bonded Mailings, Inc.*, 671 F.2d 81, 84 (2d Cir. 1982) (Illegality involving procurement of postal permit irrelevant and not integral to contract sought to be enforced).[7]

The *Nathan* court shared the District Court's "disdain for the plaintiff's audacity in suing on a contract which he, at least partially, performed by engaging in criminal acts."  In the case at bar, the same audacious situation is present, yet, the Bankruptcy Court failed to see the irony (visible to the Seventh Circuit) of providing the Appellee, an off-shore entity, a forum to benefit from its illegal and offensive conduct.  Plainly, absent the Source of Funds Discovery the Appellant cannot expose the Appellee's unlawful scheme.  Nor, can the Appellant preserve the dignity of the Courts.

Moreover, the Source of Funds Discovery was relevant to determining whether Appellees could assert a claim over the funds at all, as a thief has no claim over stolen funds.  *See In re Newpower*, 233 F.3d 922, 930 (6th Cir. 2000) (embezzler does not possess title over embezzled funds).

---

[7] Appellee's reliance on *Bild v. Konig*, 09-CV-5576(AR) (VVP), 2014 WL 3015236 (E.D.N.Y. July 3, 2014) and *Carlow v. Colonial Bank, N.A.*, 370 B.R. 402 (Bankr. S.D. Fla. 2007) provide no solace.  In *Bild*, the illegal conduct concerned an underlying loan from plaintiff to a third party borrower made eight years before the defendant's agreement to repay the loan for the benefit of the borrower in exchange for separate consideration from the borrower.  The Court held that the defendant's agreement to pay the loan was only collaterally related to the underlying illegal loan which was between different parties and for independent consideration.  *Id.* at 22-23.  The Court in *Carlow* found that the source of funds of a deposit was irrelevant to claims under Article 4 of the Uniform Commercial Code.  *Id.* at 404-05.

Clearly, the Source of Funds Discovery was directly related to enforcement of the Promissory Notes. The discovery was likely to lead to admissible evidence showing that the Promissory Notes were funded with tainted funds and that the purpose of the Promissory Notes was to launder funds or otherwise clean ill-gotten monies. Undeniably and distinct from the cases involving two contracts, different parties or the lapse of many years between the illegal conduct and the transaction being sued upon, the Appellee's illegal or offensive conduct is directly and integrally related to the enforcement of Promissory Notes and the illegal conduct touched and tainted the notes.

The Bankruptcy Court erred by denying the Appellant the opportunity to take discovery and present evidence supporting its claims that the Promissory Notes were illegal and that their enforcement would violate public policy. Moreover, the barred discovery was likely to lead to admissible evidence concerning the Appellant's unclean hands and *in pari delicto* defenses.

**C.     The   Source   of   Funds   Discovery   is   Reasonably   Likely   to Lead to Admissible Evidence Demonstrating That the Promissory Notes Are Unenforceable Based on the Defenses of Unclean Hands and *In Para Delicto*.**

Appellees conveniently mistake the forest for the trees when they argue that the Source of Funds Discovery was not relevant to Mr. Neves' *in pari delicto* or unclean hands defenses because Mr. Neves could not prove that Golden Dawn was complicit in Mr. Neves' alleged breach of the promissory notes or that Golden Dawn's conduct is connected to the conduct at issue. However, at the discovery stage, the Court does not decide whether the affirmative defenses will ultimately be successful. The only issue before the Court is whether the discovery is reasonably likely to lead to admissible evidence. *See Adkins v. Christie*, 488 F.3d 1324, 1330 (11th Cir. 2007); *Yessenow v. Hudson*, 270 F.R.D. 422, 428 (N.D. Ind. 2010) (interrogatory seeking discovery of financial information was relevant to CEO's fraud, unjust enrichment, and

unclean hands affirmative defenses to defendants' counterclaims and was reasonably calculated to lead to admissible evidence that their alleged damages were the result of their own mishandling and double dealing rather than the CEO's actions); *Nalco Chemical Co. v. Hydro Technologies, Inc.,* 148 F.R.D. 608, 616 (E.D. Wis. 1993) (finding that sales information and other materials business had collected on its competitors' prices and products relevant to defense of unclean hands in trade secret dispute; thus, information was discoverable by competitor).

It is sufficient that the Source of Funds Discovery requests are reasonably calculated to support Mr. Neves' affirmative defenses of *in pari delicto* and unclean hands by leading to admissible evidence showing that the Promissory Notes were funded for the purpose of legitimizing and laundering money obtained through illegal activity. *See* Fed R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim **or defense**--including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter." (emphasis added)). *See also ABM Financial Serv., Inc. v. Express Consolidation, Inc.,* Case No. 07-60294, 2008 WL 1776595, at *3 (S.D. Fla. April 17, 2008) (rejecting claim that discovery of financial records should not be allowed because the information is not "closely linked" to any of the party's claims or defenses where the financial information requested falls within the Federal Rules' broad definition of relevance") (citing *Donahay v. Palm Beach Tours & Transp., Inc.,* 242 F.R.D. 685, 687 (S.D. Fla. 2007) ("Discovery is not limited to the issues raised by the pleadings because 'discovery itself is designed to help define and clarify the issues.'")). Relevancy for discovery purposes is a very low threshold. *See Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (defining relevance in the context of discovery to include "any matter that bears on, or that reasonably

could lead to other matter that could bear on, any issue that is or may be in the case"). Therefore, the Trial Court should have "interpret[ed] 'relevant' very broadly to mean matter that is relevant to anything that is or may become an issue in the litigation." *Id.* at 351 n. 12.

Additionally, the merits of the affirmative defenses were never at issue below as the Appellee failed to move to strike the defenses or avoid them in any manner. *See Key Components, Inc. v. Edge Electronics, Inc.*, Case No. 3:07-CV-224, 2008 WL 4937560, at *6 (E.D. Tenn. 2008) (allowing discovery because "plaintiff has received of the defendant's intent to rely on an unclean hands defense, the plaintiff is sufficiently on notice as to the unclean hands defense and that the defendant has not waived such a defense.").

In any event, the Appellee's contention that the *in pari delicto* and the unclean hands defenses are not meritorious fails. *See Neiman v. Provident Live & Accident Insurance Co.,* 217 F. Supp. 2d 1281 (S.D. Fla. 2002) (Moreno, J.). In *Neiman,* this Honorable Court found that the doctrine of *in pari delicto* precluded recovery of disability insurance premiums for an insured whose occupation was the illegal practice of law because the insured's own wrongdoing caused the contract to be void. *Id.* at 1288-89.  In so doing, the Court found that the insured "was *in pari delicto*, if not more at fault than the insurance company, in causing the contract to be void." *Id.* Here, had Mr. Neves been able to prove that the funds utilized for the promissory notes were the proceeds of unlawful activities of Markwood, Golden Dawn and/or Frieri, Mr. Neves would seemingly be a conduit for the unlawful attempt to legitimize/launder funds emanating from tax evasion activities, illegal bond transactions, criminal usurious activities and other illegitimate operations. Therefore, all of these alleged wrongdoings are intimately related to the conduct at issue with Golden Dawn bearing more responsibility for the underlying illegality.

Similarly, at the very heart of the "unclean hands" defense is the source of the funding of the underlying transactions forming the basis for the claims.  Simply stated, Mr. Neves alleged that the moneys used to fund the Promissory Notes are the proceeds of illegal and unlawful activities and that the purpose of the Promissory Notes and the civil action to enforce them is  to legitimize those funds.  No closer link is required.  *See ABM Financial Services, Inc.,* 2008 WL 1776595 at *3.

## CONCLUSION

Based upon the foregoing arguments and authorities, Appellant, Fabrizio Dulcetti Neves, respectfully requests entry of an order reversing the Bankruptcy Court's entry of the Protective Order and Order denying the Motion to Rehear and remanding the case to the Bankruptcy Court for the purpose of permitting Mr. Neves to conduct discovery as to the Source of Funds of the Promissory Notes and for additional proceedings concerning the enforceability of the Promissory Notes, awarding the Appellant its costs incurred in this appeal pursuant to Federal Rule of Bankruptcy Procedure 8021, and for such additional relief as may be just and equitable.

Respectfully submitted,

**AKERMAN LLP**
One Southeast Third Avenue, 25th Floor
Miami, Florida 33131-1714
Phone: (305) 374-5600
Fax: (305) 374-5095

By:  /s/  *Joanne Gelfand*
    Joanne Gelfand, Florida Bar No. 515965
    E-mail: joanne.gelfand@akerman.com
    Michael B. Chavies, Florida Bar No. 191254
    E-mail:  michael.chavies@akerman.com
    Brian P. Miller, Florida Bar No. 980633
    E-mail:  brian.miller@akerman.com
    Ilana Tabacinic, Florida Bar No. 57597
    E-mail:  ilana.tabacinic@akerman.com

*Attorneys for Appellant Fabrizio Dulcetti Neves*

<u>**CERTIFICATE OF SERVICE**</u>

**I HEREBY CERTIFY** that on March 9, 2015, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day by transmission of Notices of Electronic Filing generated by CM/ECF to those parties registered to receive electronic notices of filing in this case.

By: <u>*/s/ Joanne Gelfand*                        </u>
Joanne Gelfand